FILED
Feb 15, 2018
03:30 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| APRIL HEARD, | ) | Docket No. 2017-08-1070 |
| Employee, | ) | |
| v. | ) | |
| UNITED TECHNOLOGIES CORP., | ) | State File No. 65603-2017 |
| a/k/a CARRIER CORPORATION | ) | |
| Employer, | ) | |
| And | ) | |
| NEW HAMPSHIRE INSURANCE CO., | ) | Judge Amber E. Luttrell |
| Insurance Carrier. | ) | |

## EXPEDITED HEARING ORDER DENYING
## TEMPORARY DISABILITY BENEFITS

This matter came before the Court on January 25, 2018, on April Heard's Request for Expedited Hearing seeking temporary disability benefits. The central legal issue is whether Ms. Heard is entitled to temporary partial disability during a seasonal layoff. The Court holds Ms. Heard did not present sufficient evidence to establish entitlement to temporary partial disability benefits and denies her request.

### History of Claim

Ms. Heard works for Carrier Corporation, a manufacturer of residential air conditioning units. On August 24, 2017, she injured her back and legs working as an Inventory Control Technician. Carrier accepted Ms. Heard's claim and authorized treatment with Dr. Robert Lonergan.

Ms. Heard first saw Dr. Lonergan on August 30, 2017, and he assigned light-duty restrictions. Carrier accommodated Ms. Heard's restrictions and returned her to work in a sedentary position the next day. However, on September 1, 2017, Ms. Heard and approximately 399 other union employees were subject to an unpaid seasonal layoff under Carrier's collective bargaining agreement (CBA). Ms. Heard acknowledged she was subject to the seasonal layoff in the fall of each of the four years she worked for

1

Carrier.[1]

Carrier returned Ms. Heard to work on January 3, 2018, at a higher rate of pay, and Carrier continued to accommodate her light-duty restrictions until January 22 when Dr. Lonergan totally restricted her from work. At the time of the hearing, she remained off work and under Dr. Lonergan's care. Carrier indicated it would initiate her temporary total disability benefits.

The parties introduced Dr. Lonergan's work-status notes, which indicated he placed Ms. Heard on light duty between August 30, 2017, and January 3, 2018, except for the period from October 26 through November 13, 2017, when he took her off work following an epidural steroid injection. At the hearing, Carrier stipulated it owed Ms. Heard temporary total disability benefits for this period even though it occurred during the layoff. It only disputes Ms. Heard's request for temporary *partial* disability for the remaining periods during the layoff.

Steven Morris, Carrier's Labor Relations Representative, explained the CBA provides Carrier based layoff decisions on seniority only. Mr. Morris testified union workers received notice sixty days in advance of the seasonal layoff under "The Warren Act," and Carrier posted the names of the specific employees laid off on August 29. Carrier hand-delivered letters of separation to those employees affected by the layoff on August 31, 2017, notifying the employees of their right to seek unemployment benefits. At that time, Carrier laid off approximately 400 union employees effective September 1 and laid off 150 more the following month. He confirmed Ms. Heard was among a group of 350 employees Carrier recalled to work on January 3, 2018, and that Ms. Heard returned at a higher rate of pay. Mr. Morris confirmed Carrier has seasonal layoffs every year.

On cross-examination, Ms. Heard questioned how she could receive unemployment benefits while "under workers' compensation." Mr. Morris responded that the State of Tennessee made unemployment determinations.

Blake Bryan, Carrier's Senior Environmental Health and Safety Representative,

---

[1] Ms. Heard testified she did not think she was subject to the layoff in 2017 due to her seniority, but she did not file a grievance with the union. Steven Morris, Carrier's Senior Labor Relations Representative in Human Resources, testified HR determined the employees subject to layoff based on seniority under pages 14-16 of the CBA. He testified Ms. Heard had less seniority than the employees not subject to layoff. Blake Bryan, Carrier's Senior Environmental Health and Safety Representative, testified that an employee's workers' compensation claim status bears no impact on whether an employee is subject to a seasonal layoff. He reiterated that HR determined which employees were subject to layoff under the CBA. The Court credits Mr. Morris' and Mr. Blake's testimony regarding Ms. Heard's selection for the seasonal layoff, and finds Ms. Heard presented no proof that her lay off was due to her worker's compensation claim.

testified he handles Carrier's workers' compensation claims. He testified Carrier's policy is to make every effort to accommodate light-duty restrictions so employees may receive their full pay. Consistent with their policy, Carrier accommodated Ms. Heard's light-duty restrictions and would have continued to do had she not been subject to the seasonal layoff.

Ms. Heard testified she did not work during the seasonal layoff, and she contended Carrier owes her temporary partial disability benefits for the period she was on light-duty between September 1, 2017, and January 3, 2018. She offered no proof regarding a denial of unemployment compensation during this same period.

**Findings of Fact and Conclusions of Law**

At an Expedited Hearing, Ms. Heard must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2016).

The sole issue is Ms. Heard's entitlement to temporary partial disability benefits. "An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability." Temporary partial disability (TPD) refers to the time, during which the injured employee is able to resume some gainful employment, working under restrictions, but has not reached maximum recovery. TPD is payable when the employer either (1) cannot return the employee to work within the restrictions or (2) cannot provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury, the injured worker may be eligible for temporary partial disability. *Jones v. Crencor,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7-8 (Dec. 11, 2015).

Here, it is undisputed that Dr. Lonergan provided Ms. Heard work restrictions on August 30, 2017. Carrier accommodated those restrictions as of August 31 and when she returned after the layoff on January 3, 2018, and it paid her full wages while doing so. The Court finds Carrier would have continued to provide Ms. Heard modified-duty work within her restrictions between September 1, 2017, and January 3, 2018, had she not been subject to the unrelated seasonal layoff under the CBA. The question before the Court is whether Ms. Heard is entitled to TPD benefits during a seasonal layoff. For an answer to this unique question, the Court must consider the proof presented. Here, there is no proof that her inability to work during this period of time related to her restrictions. The only proof presented points to the seasonal layoff as the reason she did not work. Thus, Ms. Heard has not met the requirements for TPD benefits, and her request for temporary disability benefits is denied.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Heard's claim against Carrier Corporation/United Technologies Corporation and its workers' compensation carrier for the requested temporary partial disability benefits is denied.

2. As stipulated, Carrier shall pay Ms. Heard temporary total disability benefits from October 26, 2017, through November 13, 2017, when Dr. Lonergan totally restricted her from work.

3. **This matter is set for a telephonic Status Hearing on March 12, 2018, at 10 a.m. Central Time. You must call toll-free 855-543-5039 to participate in the hearing.** Failure to call in may result in a determination of the issues without your further participation.

**ENTERED this the 15th day of February, 2018.**

**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

4

## APPENDIX

Exhibits:
1. Affidavit
2. First Report of Injury
3. Panel
4. Dr. Lonergan's August 30, 2017 record
5. Dr. Lonergan's work status forms (collective exhibit)
6. MRI report
7. Carrier's counsel's email to Ms. Heard
8. Letter of Separation
9. Collective Bargaining Agreement (pgs. 14-16)

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Transfer Order
5. Carrier's position statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 15th day of February, 2018.

| Name | Via Email | Service sent to: |
|---|---|---|
| April Heard, Esq., Self-Represented Employee | X | aprilheard72@yahoo.com |
| Eugene S. Forrester, Jr., Esq., Attorney for Employer | X | cforrester@farris-law.com |
| James Hicks, Esq., Ombudsman Attorney | X | james.hicks@tn.gov |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims